L7JPROSC

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

UNITED STATES OF AMERICA,

        v.                                    19 CR 00807 (LAP)-2
                                                        Videoconference

JAIME ROSARIO, JR.,

             Defendant.

------------------------------x

                                                  New York, N.Y.
                                                  July 19, 2021
                                                  9:03 a.m.

Before:

                      HON. LORETTA A. PRESKA,

                                   District Judge

                 APPEARANCES VIDEOCONFERENCE

AUDREY STRAUSS,
    United States Attorney for the
    Southern District of New York
BY:  DANIEL G. NESSIM
    Assistant United States Attorney

ZMO LAW PLLC
    Attorneys for Defendant
BY:  TESS M. COHEN

1              (The Court and all parties appearing via
2     videoconference)
3              THE COURT:  Good morning, Mr. Rosario.  Wonderful.  We
4     are ready.  United States v. Rosario.  Is the government ready?
5              MR. NESSIM:  Yes, your Honor.  Daniel Nessim for the
6     government.
7              THE COURT:  Good morning.
8              Is the defense ready?
9              MS. COHEN:  Yes.  Good morning, your Honor.  Tess
10    Cohen for Mr. Rosario, ZMO Law, 260 Madison Avenue.
11             THE COURT:  Good morning.
12             And, Mr. Rosario, would you just confirm that you're
13    on the video, please, sir?
14             THE DEFENDANT:  Good morning.  I am here.
15             THE COURT:  Thank you.
16             Counsel, are we agreed that we are proceeding pursuant
17    to the CARES Act because of the Covid-19 pandemic?
18             MS. COHEN:  Yes.
19             MR. NESSIM:  Yes, your Honor.
20             THE COURT:  Thank you.  Now, Mr. Rosario, you know
21    that you are entitled to have an in-person proceeding with the
22    lawyers, the Judge, and you all in one room.  You know that,
23    sir?
24             THE DEFENDANT:  Yes.  Yes, your Honor.
25             THE COURT:  And am I correct that after talking with

1  Ms. Cohen and Mr. Margulis, you've decided that it's in your
2  best interest to proceed by video, like we're doing this
3  morning; is that right, sir?
4          THE DEFENDANT:  Yes, your Honor.
5          THE COURT:  I find that Mr. Rosario as waived his
6  right to be present.
7          Ms. Cohen, I think that this is your dime on this
8  application.  Do you want to add anything to your papers?
9          MS. COHEN:  Just briefly, your Honor.  I just want to
10 highlight the fact that we're talking about a very finite,
11 likely six-month, period between now and trial where if
12 Mr. Rosario is released, it would really kind of create a fork
13 in the road for his health.
14         If he's released, he can really get the two issues
15 that he's dealing with that are quite severe and causing him,
16 at least in one instance, daily pain, under control and into
17 remission before going potentially back into jail at
18 sentencing.
19         Mr. Rosario is realistic about his outcome of the
20 trial, but he would like to have this period to improve his
21 health which could mean if he is incarcerated after trial, he
22 won't be suffering from daily pain.  He won't be suffering from
23 the other symptoms that we discussed at length in our brief and
24 will really reduce his risks of colon cancer, which are quite
25 significant if he's not able to get this into remission, which

1  is next to impossible, without undergoing sort of extreme
2  dietary changes that BOP is just not set up to handle that.
3              So we think that that reduces both his risk of flight
4  and his dangerousness and also the six-month time period does
5  that as well.  In addition, temporary release would be
6  appropriate even if the Court finds that a release under the
7  normal mechanism is not.
8              But otherwise, we'll rely on the papers, which outline
9  this all more fully.
10             THE COURT:  Yes, ma'am.  Thank you.
11             Does the government wish to add anything to its
12 papers?
13             MR. NESSIM:  Just very briefly, your Honor.  As to the
14 temporary release, the burden is on the defendant to
15 demonstrate that there is a compelling reason for release, and
16 while there's no question that he's been diagnosed with these
17 health conditions and they do seem, you know, serious and they
18 should be addressed, the government does not believe the
19 defendant met that compelling-reason burden of demonstrating
20 why temporary release is necessary at this point in time.
21             I also want to highlight the time line, to some
22 degree, you know, December 2020, apparently he began
23 experiencing some of these symptoms.  In April 2021, he was
24 diagnosed with the two conditions we've been discussing most
25 significantly, but the government, you know, wasn't aware of

that until we began discussing a bail application and got early information about a bail application.

And I don't think that we fully exhausted the government's mechanism to try to work with the BOP to make sure that Mr. Rosario is getting the attention he needs, the ability of the Court through medical orders to impose restrictions on the BOP and ensure that his medical needs are being met.

And so for those reasons, in addition to the others that we cite in our application, we don't believe that any sort of relief is appropriate here.

THE COURT:  Ms. Cohen?

MS. COHEN:  Yes.

THE COURT:  Is there anything you would like to add?

MS. COHEN:  I do.  I think there's two issues with the proposal, one is that going through the mechanisms Mr. Nessim has cited, as we all know is a slow process.  The reason there was this delay between his diagnosis and our bail application is, to a certain extent, we were waiting to see what happened, whether they would follow up as they were supposed to in early May, and also just the delay in getting his medical records.

And Mr. Rosario is in daily pain right now because he cannot control his diet.  So to say that he needs to wait until the form at the Bureau of Prisons is processed when his pain level actually causes him to double over on a daily basis, is really just -- it's just not fair to Mr. Rosario to make him go

|   |   |
|---|---|
| 1 | through that when there are other mechanisms that will keep the |
| 2 | public safe and will certainly, you know, prevent any flight. |
| 3 |     THE COURT:  Anything else, Mr. Nessim? |
| 4 |     MR. NESSIM:  Your Honor, as clear from our opposition, |
| 5 | we don't believe there are any other mechanism that will keep |
| 6 | the public safe or protect against the risk of flight.  We do |
| 7 | believe that he should continue to be detained. |
| 8 |     THE COURT:  Thank you. |
| 9 |     Counsel, with respect to the dangerousness to the |
| 10 | community and the risk of flight, I adhere to my prior ruling, |

1  through that when there are other mechanisms that will keep the
2  public safe and will certainly, you know, prevent any flight.
3           THE COURT:  Anything else, Mr. Nessim?
4           MR. NESSIM:  Your Honor, as clear from our opposition,
5  we don't believe there are any other mechanism that will keep
6  the public safe or protect against the risk of flight.  We do
7  believe that he should continue to be detained.
8           THE COURT:  Thank you.
9           Counsel, with respect to the dangerousness to the
10 community and the risk of flight, I adhere to my prior ruling,
11 that there is no combination of conditions that would assure
12 the safety of the community and Mr. Rosario's return for trial.
13 Those findings have been confirmed by additional evidence that
14 the government has submitted from Mr. Rosario's cell phone,
15 including his desire to "blow someone's head off."  So that
16 evidence has only been strengthened since the last bail
17 application.
18          With respect to Mr. Rosario's health condition, I find
19 that although it is concerning, he has not raised carried his
20 burden of raising compelling conditions requiring his release.
21 As is clear from the papers, Mr. Rosario is receiving treatment
22 for his condition.  There is also a discussion of the doctor's
23 ordering a low-fiber diet.  To the extent that that diet is not
24 being provided to Mr. Rosario, this is the first I've heard of
25 it, and I say to counsel, my experience is that when the Court

asks help from the medical officers at the facility, we generally do get results in a much quicker manner, for whatever reason, than when counsel is asking.

So to my mind, the burden has not been carried here. I appreciate the government's offering its assistance to be in touch with the medical personnel, and I will certainly offer my assistance to help get Mr. Rosario the low-fiber diet that he needs.

To the extent that counsel is arguing that Mr. Rosario needs to be released temporarily so that he can prepare for trial, that does not in any way outweigh the dangerousness to the community and the risk of flight that the Court has earlier ruled on. Therefore, that basis for release is also rejected.

Counsel, is there anything else that you want to talk about today?

MS. COHEN: No, your Honor. I'm sure we'll be following up with requests for specific medical-related assistance because part of the issue is that it's simply not a low-fiber diet that Mr. Rosario is supposed to undertake. It's an elimination diet. He has to figure out what his specific body is going to accept, which is not the same across everyone with these conditions. So I think we'll be following up closely with the Court as best how to structure that and maybe speak to BOP as well.

THE COURT: Okay. Well, I'll encourage you to include

L7JPROSC

the United States Attorney's Office in those conversations because, in my experience, that has helped ease the way. So let me know if there's a problem after you folks have all conferred and tried your best.

MS. COHEN:  Understood.

THE COURT:  Yes, ma'am.

Ms. Reporter, is there anything else that you need from any of us?

THE REPORTER:  No, your Honor.  Thank you.

THE COURT:  Thank you, counsel.  Good morning.

Good morning, Mr. Rosario.  And, Mr. Rosario, would you thank the officer who assisted you for me.

Good morning, counsel.  Thank you.

MR. NESSIM:  Thank you, your Honor.

THE COURT:  Bye, bye.

MS. COHEN:  Bye.

(Adjourned)