UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
┌─────────────────────────────────────┐
 UNITED STATES OF AMERICA,

                    Plaintiff,

 -against-

 JAIME ROSARIO JR.,

                    Defendant.
└─────────────────────────────────────┘
```

No. 19-CR-807 (LAP)

MEMORANDUM AND ORDER

LORETTA A. PRESKA, Senior United States District Judge:

Before the Court is Defendant Jaime Rosario Jr.'s motion to
(1) sever his case from Defendant Jeanluc Joiles and
(2) suppress certain evidence seized from his cell phone. (See
dkt. no. 85 ("Mot."); see also dkt. no. 95 ("Reply").)  The
Government opposes the motion. (See dkt. no. 93 ("Opp.").)  On
May 12, 2021, the Court issued an order denying Mr. Rosario's
motion to sever, noting that a written opinion would arrive in
due course. (See dkt. no. 102.)  The basis for that ruling is
set forth in further detail below.  For the reasons set forth,
the motion to suppress is DENIED.

I.  **Background**

On November 13, 2019, the Government charged Mr. Rosario
and Mr. Joiles with one count of conspiring to distribute over
500 grams of methamphetamine, a quantity of fentanyl, and a
quantity of cocaine, in violation of 21 U.S.C. § 846,
841(b)(1)(A), and 841(b)(1)(C). (See Indictment, dated Nov. 13,

1

2019 [dkt. no. 6], ¶ 3.)   Mr. Joiles was separately charged with one count of distributing fentanyl resulting in the death of Rachel Spiteri on June 19, 2019, in violation of 21 U.S.C. § 841(a)(1) and 841(b)(1)(c).   (Id. ¶¶ 4-6.)   Finally, the Government charged Mr. Rosario with one count of possessing a firearm in relation to a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A)(i) and 2.   (Id. ¶ 7.)

In connection with Mr. Rosario's arrest on October 25, 2019, law enforcement recovered Mr. Rosario's cellular phone (the "Subject Device").   (See Opp. at 3, 15.)   On November 26, 2019, this Court authorized law enforcement to search the electronically stored information ("ESI") on the Subject Device (the "November 2019 Warrant") and seize "evidence, fruits, and instrumentalities of violations of" narcotics trafficking, conspiracy to traffic in narcotics (21 U.S.C. §§ 841, 846), and firearms possession in relation to drug trafficking crimes (21 U.S.C. §§ 924(c) and 2) (collectively, the "Subject Offenses"). (See Mot., Ex. G at 30-31.)   The November 2019 Warrant limited the timeframe for the majority, but not all, of the categories of items that law enforcement could seize during the search to April 2019 through the present, i.e., November 26, 2019.   (Id. at 31-32.)   Following the issuance of the November 2019 Warrant, the Government determined that a third-party vendor was required to decrypt the Subject Device.   (See Opp. at 16.)

Upon learning that the Subject Device was inadvertently never sent to the third-party vendor, the Government obtained a new warrant for the Subject Device on December 31, 2020 ("the December 2020 Warrant"). (See Mot., Ex. G at 1.) Similar to the November 2019 Warrant, the December 2020 Warrant limited the timeframe for the majority of categories of materials to be seized to April 1, 2019 through October 25, 2019 (the "Relevant Time Period"). (See id. at Attach. A.) The following categories of materials were not limited to a particular timeframe:

a. "[C]ontact information for co-conspirators in the Subject Offenses, including but not limited to the identity, phone numbers, and addresses of suspects and co-conspirators;"

b. "[B]ank records, checks, credit card bills, account information, and other financial records relating to the Subject Offenses;"

c. "[D]igital photographs and video relating to the Subject Offenses;" and

d. "[E]vidence of user attribution showing who used or owned the Subject Device at the time the records and items described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history." (See id.)

The December 2020 Warrant, like the November 2019 Warrant, provided procedures for searching ESI on the Subject Device. The December 2020 Warrant states, "law enforcement may use various techniques to determine which files or other ESI contain evidence or fruits of the Subject Offenses.  Such techniques may include . . . conducting a file-by-file review by 'opening' or reading the first few 'pages' of such files in order to determine their precise contents (analogous to performing a cursory examination of each document in a file cabinet to determine its relevance)."   (Mot., Ex. G at 8.)   The December 2020 Warrant specified that "[l]aw enforcement personnel will make reasonable efforts to restrict their search to dates falling within the categories of evidence specified in the warrant.  Depending on the circumstances, however, law enforcement may need to conduct a complete review of all the ESI from the Subject Devices to locate all data responsive to the warrant."  (Id.)

Upon receiving a copy of the Subject Device's extraction in February 2021, the Government employed the Cellebrite program to conduct its review.  (See Opp. at 18.)  Cellebrite allows users to review text message communications as a continuous chain between chat participants.  (Id.)  During its review of the Subject Device for items responsive to the December 2020 Warrant, the Government reviewed a series of text message chains

4

that predated but continued through the Relevant Time Period containing communications regarding narcotics trafficking prior to April 1, 2019.  (Id. at 18-19.)

These communications indicated to the Government that Mr. Rosario participated in the Subject Offenses, using the Subject Device, prior to April 1, 2019.  Shortly after, the Government applied for and obtained a new search warrant for the Subject Device on February 18, 2021 (the "February 2021 Warrant") that permitted the Government to search the Subject Device for the categories of evidence identified in the December 2020 Warrant without time limitations.[1]  (Id. at 19; see Mot., Ex. H at 5.)

On March 19, 2021, Mr. Rosario filed the instant motions. (See Mot.)  On May 12, 2021, the Court denied Mr. Rosario's motion to sever and indicated that a written opinion would follow.  (See dkt. no. 102.)  This is that opinion.

## II.  Discussion

### A. Motion to Sever

#### i.   Applicable Law

Federal Rule of Criminal Procedure 8(b) permits joinder of two or more defendants in the same indictment or information "if

---

[1] In its application, the Government noted that "messages stored on the Subject Device date back to in or about March 2018, and as described above, messages concerning narcotics trafficking began to be exchanged over the Subject Device at least as early as April 2018."  (Mot., Ex. H at 5.)

they are alleged to have participated in the same act or
transaction, or in the same series of acts or transactions,
constituting an offense or offenses." Fed. R. Crim. P. 8(b).
In the Court of Appeals, the "same series of acts or
transactions" "mean[s] that joinder is proper where two or more
persons' criminal acts are unified by some substantial identity
of facts or participants, or arise out of a common plan or
scheme." United States v. Cervone, 907 F.2d 332, 341 (2d Cir.
1990) (internal quotation marks and citations omitted). In
analyzing joinder under Rule 8(b), courts must "apply a
commonsense rule to decide whether, in light of the factual
overlap among charges, joint proceedings would produce
sufficient efficiencies such that joinder is proper
notwithstanding the possibility of prejudice to either or both
of the defendants resulting from the joinder." United States v.
Rittweger, 524 F.3d 171, 177 (2d Cir. 2008) (internal quotation
marks and citation omitted).

Federal Rule of Criminal Procedure 14(a) provides that
"[i]f the joinder of offenses or defendants in an indictment, an
information, or a consolidation for trial appears to prejudice a
defendant or the government, the court may order separate trials
of counts, sever the defendants' trials, or provide any other
relief that justice requires." Fed. R. Crim. P. 14(a). "Rule
14 does not require severance even if prejudice is shown;

6

rather, it leaves the tailoring of the relief to be granted, if any, to the district court's sound discretion." Zafiro v. United States, 506 U.S. 534, 538-39 (1993) (citing United States v. Lane, 474 U.S. 438, 449, n.12 (1986); Opper v. United States, 348 U.S. 84, 95 (1954)).  If the Government properly joined defendants under Rule 8(b), then "a district court should grant a severance under Rule 14 only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence."  United States v. Cacace, 796 F.3d 176, 192 (2d Cir. 2015) (quoting Zafiro, 506 U.S. at 539).

"Differing levels of culpability and proof are inevitable in any multi-defendant trial and, standing alone, are insufficient grounds for separate trials.  Even joint trials involving defendants who are only marginally involved alongside those heavily involved are constitutionally permissible." United States v. Spinelli, 352 F.3d 48, 55 (2d Cir. 2003) (internal quotation marks and citations omitted); see also United States v. Nerlinger, 862 F.2d 967, 973 (2d Cir. 1988) (denying a motion to sever where defendants "were not alleged to have had any direct contact with regard to the conspiracy and that their respective acts committed in furtherance of the conspiracy occurred during chronologically distinct periods

7

. . . [but] were alleged to have participated in the same conspiracy and evidence of the central features of that conspiracy . . . was relevant to both defendants").

There is "a preference in the federal system for joint trials of defendants who are indicted together.  Joint trials play a vital role in the criminal justice system, as they promote efficiency and serve the interests of justice by avoiding the scandal and inequity of inconsistent verdicts." United States v. O'Connor, 650 F.3d 839, 858 (2d Cir. 2011) (internal quotation marks and citations omitted).  "'[L]ess drastic measures [than severance], such as limiting instructions, often will suffice' to cure any risk of prejudice and permit joinder."  United States v. Page, 657 F.3d 126, 129 (2d Cir. 2011) (quoting Zafiro, 506 U.S. at 539).

"In deciding a motion for severance, a court must consider, among other factors: (1) possible conflicts between defense theories, (2) the possibility that the moving defendant will be prejudiced by a joint trial, and (3) the complexity of a joint trial, including the number of defendants, the estimated trial length, disparities in proof offered against the various defendants, and the defendants' differing roles in the alleged criminal schemes."  United States v. Hameedi, No. 17 Cr. 137 (JGK), 2017 WL 5152991, at *3 (S.D.N.Y. Nov. 3, 2017) (citing

United States v. Guillen-Rivas, 950 F. Supp. 2d 446, 457
(E.D.N.Y. 2013)).

For a conspiracy charge, "[t]he established rule is that a
non-frivolous conspiracy charge is sufficient to support joinder
of defendants under" Rule 8(b).  Nerlinger, 862 F.2d at 973
(citing example cases).  "Where a defendant is a member of a
conspiracy, all the evidence admitted to prove that conspiracy,
even evidence relating to acts committed by co-defendants, is
admissible against the defendant."  United States v. Salameh,
152 F.3d 88, 111 (2d Cir. 1998) (citation omitted).

### ii.  **Application**

Severance of Mr. Rosario's trial pursuant to Rule 8(b) or
Rule 14(a) is not warranted.

Mr. Rosario argues that the Court should sever his trial
from Mr. Joiles' trial on two grounds: (1) he is improperly
joined with Mr. Joiles under Count 1 of the indictment because
the Government has no evidence that Mr. Rosario participated in
a conspiracy to possess and sell fentanyl; and (2) because the
Government lacks evidence that a conspiracy existed between Mr.
Joiles and Mr. Rosario to traffic pills containing fentanyl, the
allegations in Count 1 and Count 2 of the indictment are not
part of the "same act or transaction, or in the same series of
acts or transactions" as defined in Rule 8(b).  (See Mot. at 9-
13.)  Mr. Rosario also argues that even if joinder of Mr.

Rosario and Mr. Joiles is proper under Rule 8(b), the Court
should server Mr. Rosario's trial pursuant to Rule 14(a). (See
id. at 13-16.)

The Court finds no merit in Mr. Rosario's argument that the
Government's allegation that Mr. Rosario and Mr. Joiles
conspired to sell fentanyl is frivolous. Count 1 of the
indictment charges that from June 2019 through October 2019, Mr.
Joiles and Mr. Rosario conspired to possess and distribute
methamphetamine, cocaine, and fentanyl in violation of 21 U.S.C.
§ 846, 841(b)(1)(A), and 841(b)(1)(C). (Dkt. no. 6 ¶¶ 1-3.)
Because both Mr. Rosario and Mr. Joiles distributed oxycodone
pills actually containing fentanyl to the undercover officer,
the joinder of both defendants presumptively satisfies Rule
8(b). (See Opp. at 2 (noting that on September 4, 2019, the
undercover officer purchased purported oxycodone pills from Mr.
Rosario that actually contained fentanyl).)

Mr. Rosario has not made a showing that the conspiracy
charge with respect to trafficking fentanyl is frivolous,
particularly given the fact that the Government's evidence
suggests that Mr. Rosario knew that he possessed a controlled
substance and that the Grand Jury found probable cause to
believe that Mr. Rosario and Mr. Joiles were co-conspirators for
distributing controlled substances. (See id. at 9-10.) In this
Circuit, "the law is settled that a defendant need not know the

exact nature of a drug in his possession to violate § 841(a)(1);
it is sufficient that he be aware that he possesses some
controlled substance."[2]  United States v. Morales, 577 F.2d 769,
776 (2d Cir. 1978) (citations omitted)  The Court of Appeals
applies a "common sense approach when considering the propriety
of joinder under Rule 8(b)" and, as such, in the instant case "a
reasonable person would easily recognize the common factual
elements that permit joinder."  United States v. Feyrer, 333
F.3d 110, 114 (2d Cir. 2003) (quotation marks and citation
omitted).  Accordingly, joinder of Mr. Rosario and Mr. Joiles in
Count 1 of the indictment does not violate Rule 8(b).

In light of Count 1's conspiracy charge, Count 1 of the
indictment is properly joined with Count 2 under Rule 8(b).
Count 2 of the indictment charges Mr. Joiles with distributing
fentanyl on June 19, 2019, which resulted in Rachel Spiteri's
death on the same day.  (See dkt. no. 6 ¶¶ 4-6.)  As Mr. Rosario
and Mr. Joiles' alleged conspiracy to distribute controlled
substances, including fentanyl, occurred between June 2019 to
October 2019, Mr. Joiles' narotics distribution is a substantive
count arising from the alleged conspiracy.  The Court of Appeals
clearly upholds "[j]oinder of distinct substantive charges . . .

---

[2] The Government bears the burden of presenting evidence at trial
demonstrating that Mr. Rosario knew that he possessed and
distributed a controlled substance.

when the acts are properly linked by a conspiracy charge" as
"[t]he indictment need not allege that every defendant
participated in each act or in every part of the conspiracy."
United States v. LaPetina, No. SSS 85 Cr. 822 (JFK), 1987 WL
15126, at *1 (S.D.N.Y. July 29, 1987) (citations omitted).
Accordingly, Count 1 and Count 2 of the indictment are properly
joined under Rule 8(b).

Nor do Mr. Rosario's claims of prejudice meet the "heavy
burden" of establishing that substantial prejudice would result
if his trial is not severed from Mr. Joiles. See Aramas v.
Donnelly, No. 99-CV-11306 (JSR) (AJP), 2002 WL 31307929, at *16
(S.D.N.Y. Oct. 15, 2002) (quotation marks and citations
omitted). Mr. Rosario argues that a jury's hearing evidence
related to Count 2 of the indictment, specifically evidence
related to the death of Ms. Spiteri, is prejudicial because Mr.
Rosario is also alleged to have sold purported oxycodone pills
that contained fentanyl to the undercover officer. (See Mot. at
13-14.) As the Government notes, the facts in United States v.
Charlton, No. 18 Cr. 30 (PAC), 2019 WL 1595860 (S.D.N.Y. Apr.
15, 2019) are analogous. In Charlton, the defendant's claim
that evidence regarding overdose deaths prejudiced him failed
when the defendant was "charged with distributing heroin laced
with fentanyl" and "both overdoses resulted from drugs
distributed by the conspiracy in which [defendant] also is

charged with participating." Id. at *2.  Here also, the
Government alleges that Ms. Spiteri died from drugs distributed
by the conspiracy in which Mr. Rosario participated.  (See Opp.
at 3, 13.)  Even assuming the Government would not introduce
this evidence against Mr. Rosario at a severed trial, a
defendant is "not entitled to severance [under Rule 14] merely
because [he] may have a better chance of acquittal in [a]
separate trial[]."  Zafiro, 506 U.S. at 540.  Nor is Mr. Rosario
"entitled to severance because the evidence against his co-
defendant[] is more damaging or voluminous than the evidence
against him."  Charlton, 2019 WL 1595860, at *3 (citing
Spinelli, 352 F.3d at 55).  Moreover, Mr. Rosario has not shown
how a limiting instruction could not address the risk of
spillover prejudice.  See United States v. Ramos, 346 F. Supp.
2d 567, 575 (S.D.N.Y. 2004) (quoting United States v. Santiago,
174 F. Supp. 2d 16, 22 (S.D.N.Y. 2001) ("[L]imiting instructions
to the jury have emerged as the preferred device for curing any
prejudicial spillover that may result from a multi-defendant,
multi-count trial.")).

In sum, Mr. Rosario has not established prejudice
sufficient to overcome the presumption in favor of joint trials,
and his trial will not be severed.  Accordingly, the branch of
Mr. Rosario's motion seeking to sever his case is DENIED.

B. Motion to Suppress on Particularity or Overbreadth Grounds

i. **Applicable Law**

The Fourth Amendment's Warrants Clause states that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. Amend. IV. Thus, the Warrants Clause "requires particularity and forbids overbreadth." United States v. Cioffi, 668 F. Supp. 2d 385, 390 (E.D.N.Y. 2009). "Although somewhat similar in focus, these are two distinct legal issues: (1) whether the items listed as 'to be seized' in the warrant were overbroad because they lacked probable cause and (2) whether the warrant was sufficiently particularized on its face to provide the necessary guidelines for the search by the executing officers." United States v. Hernandez, No. 09 Cr. 625 (HB), 2010 WL 26544, at *7 (S.D.N.Y. Jan. 6, 2010) (citations omitted); see also United States v. Nejad, 436 F. Supp. 3d 707, 724 (S.D.N.Y. 2020) (quoting United States v. Cohan, 628 F. Supp. 2d 355, 359 (E.D.N.Y. 2009)) ("A warrant, therefore, can be unconstitutionally infirm in two conceptually distinct but related ways: either by seeking specific material as to which no probable cause exists, or by giving so vague a description of the material sought as to impose no meaningful boundaries.").

ii.  **Application**

Suppression of digital photographs, videos and bank records that fell outside the April 1, 2019 through October 25, 2019 timeframe seized from the Subject Device is not warranted, as the December 2020 Warrant was sufficiently particularized and not overbroad.

Mr. Rosario raises two arguments with respect to four categories of items listed in the December 2020 Warrant: (1) "contact information for co-conspirators in the Subject Offenses;" (2) "bank records, checks, credit card bills, account information, and other financial records relating to the Subject Offenses;" (3) "digital photographs and video relating to the Subject Offenses;" and (4) "evidence of user attribution" (collectively, the "Non-Temporal Categories").[3]  (See Mot. at 31; Ex. G at Attach. A.)  First, Mr. Rosario argues that the Non-Temporal Categories are insufficiently particularized for failing to impose temporal limitations.  (See id. at 30-33.) Second, Mr. Rosario argues that the Non-Temporal Categories are overbroad and unsupported by the probable cause set forth in the December 2020 Warrant.  (See id. at 33.)  At the outset, the

---

[3] Although Mr. Rosario focuses his argument on the second and third categories, admitting that "one can, perhaps, intuit the" reasons why "temporal limitations were not required" "with regards to contacts and user attribution," the Court's analysis applies to each of the four categories.  (See Mot. at 32.)

Court rejects the Government's position that Mr. Rosario's
motion to suppress the Non-Temporal Categories fails because the
Government seized such items pursuant to the February 2021
Warrant.  (See Opp. at 25-30.)  An analysis of the particularity
and breadth of the December 2020 Warrant is proper as the
Government conducted a search of the Subject Device pursuant to
that warrant.

There is no merit to Mr. Rosario's argument that the
December 2020 Warrant is insufficiently particularized because
it allows the Government to seize certain information without
regard to timeframe.  As Mr. Rosario states in his motion, a
warrant is sufficiently particularized when (1) "the warrant []
identif[ies] the specific offense for which the police have
established probable cause," (2) the "warrant [] describe[s] the
place to be searched," and (3) "the warrant [] specif[ies] the
'items to be seized by their relation to the designated crime.'"
United States v. Galpin, 720 F.3d 436, 445-46 (2d Cir. 2013)
(quoting United States v. Williams, 592 F.3d 511, 519 (4th Cir.
2010)).  (See also Mot. at 31.)  The December 2020 Warrant met
each of these requirements.  First, the December 2020 Warrant
identified narcotic trafficking, conspiracy to traffic in
narcotics, and firearms possession in relation to drug
trafficking crimes as the specific offenses for which the police
had established probable cause.  (See Mot., Ex. G, Attach. A.)

16

Second, the December 2020 Warrant limited the devices subject to the Government's search.  (Id.)  Finally, the December 2020 Warrant specified that the Government could only search and seize items from the Non-Temporal Categories "related to the Subject Offenses."  (Id.)

Accordingly, the Court denies Mr. Rosario's motion to suppress the Non-Temporal Categories, finding that the December 2020 Warrant was sufficiently particular.

Mr. Rosario's alternative argument that the Non-Temporal Categories are overbroad and unsupported by the probable cause set forth in the December 2020 Warrant similarly fails.  A warrant "is overbroad if its description of the objects to be seized . . . is broader than can be justified by the probable cause upon which the warrant is based."  Nejad, 436 F. Supp. 3d at 725 (quotation marks and citation omitted).  Mr. Rosario argues that "[t]here is simply no probable cause to believe that images, videos and bank records stored on Mr. Rosario's phone months before the beginning of the alleged conspiracy, no matter how far removed from the alleged subject offenses, are evidence of the subject offenses."  (See Mot. at 33.)  Thus, as the Government states, Mr. Rosario does not claim that the entire December 2020 Warrant was unsupported by probable cause, only the Non-Temporal Categories, specifically photographic, video, and financial-record evidence.  (See Opp. at 28.)

17

Courts conduct a "totality-of-the-circumstances" analysis to determine whether probable cause supports a search warrant. Illinois v. Gates, 462 U.S. 213, 238 (1983).  The issuing magistrate must "make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place."  Id.  The nexus between the place to be searched and the alleged criminal activity "may be based on reasonable inference from the facts presented based on common sense and experience."  United States v. Singh, 390 F.3d 168, 182 (2d Cir. 2004) (internal quotation marks and citation omitted).

It is this Court's duty in "reviewing the validity of a search warrant [] simply to ensure that the magistrate had a substantial basis for . . . concluding that probable cause existed."  United States v. Rosa, 11 F.3d 315, 326 (2d Cir. 1993) (internal quotation marks and citations omitted). Moreover, a "search warrant issued by a neutral and detached magistrate is entitled to substantial deference, and 'doubts should be resolved in favor of upholding the warrant.'"  Id. (quoting United States v. Travisano, 724 F.2d 341, 345 (2d Cir. 1983)).

As Mr. Rosario addresses in his motion, see Mot. at 31, "[a]mongst the district courts in [this circuit], while there is general agreement that a time frame is relevant" in determining whether the absence of a specific time period violates the overbreadth prong of the Fourth Amendment, "there is no apparent consensus as to when [a time frame] is required." Cohan, 628 F. Supp. 2d at 366.

The information in the December 2020 Warrant's affidavit provides a substantial basis for the magistrate judge to conclude that probable cause existed with respect to photographic, video, and financial-record evidence of the Subject Offenses, irrespective of timeframe.  For example, the affiant states that based on his "training and experience" he knows that "individuals who engage in narcotics trafficking store records relating to their illegal activity" including "stored photographs and other data regarding narcotics and/or illegal firearm possession." (See Mot., Ex. G at 6.)  Under a "practical, common-sense" probable cause determination, this Court is persuaded that the Subject Device could contain photographic, video, or financial-record evidence relating to the Subject Offenses that fall outside of the timeframe imposed on other categories of information.

The Court need not decide whether the lack of temporal limitations for the Non-Temporal Categories renders the December

2020 Warrant unconstitutionally overbroad because the Court concludes that the executing officers acted in good-faith reliance on them.  See Cohan, 628 F. Supp. 2d at 367 (noting that the uncertainty regarding "when, if at all, the lack of a time frame would render a warrant for the seizure of business records overbroad . . . triggers the 'good faith' exception to the exclusionary rule").  In establishing the good faith exception in United States v. Leon, 468 U.S. 897 (1984), the Supreme Court noted that "[i]n the ordinary case, an officer cannot be expected to question the magistrate's probable-cause determination or his judgment that the form of the warrant is technically sufficient."  Id. at 921.  Thus, when an "officer's reliance on the magistrate's probable-cause determination and on the technical sufficiency of the warrant he issues [is] objectively reasonable," then suppression is not warranted.  Id. at 922-23.

Because no consensus exists in this Circuit as to when temporal limitations are required, this Court cannot say that "a reasonably well-trained officer would have known that the search was illegal despite the magistrate's authorization."  Id. at 922 n.23; see also Cohan, 628 F. Supp. 2d at 367 (holding the good-faith exception applied because "the Second Circuit has never addressed when, if at all, time-frames are a constitutional requirement in business-record search warrants, and district

20

courts in this circuit have not converged upon a clear rule").
Thus, this Court concludes that the December 2020 Warrant was
not so facially deficient that reliance upon it was
unreasonable, and the good-faith exception applies. Accordingly,
even if the Court were to find the December 2020 Warrant
constitutionally deficient due to the lack of temporal
limitations for the Non-Temporal Categories, suppression of
evidence from the Non-Temporal Categories is unwarranted.

C. Motion to Suppress on Manner of Search Grounds

　　　Mr. Rosario contends, in conjunction with his arguments
regarding particularity and overbreadth, that the manner in
which the Government executed the December 2020 Warrant did not
comport with the Fourth Amendment's reasonableness standard.
(See Mot. at 20.)  Specifically, Mr. Rosario asserts that "[i]n
searching Mr. Rosario's phone indiscriminately and without using
the simple tools available to follow the court's orders, the
government undertook a general search, thus triggering
suppression of all evidence seized from Mr. Rosario's
cellphone."  (Id.)

　　　It is settled law that a "search must be confined to the
terms and limitation of the warrant authorizing it."  United
States v. Matias, 836 F.2d 744, 747 (2d Cir. 1988) (citing
Bivens v. Six Unknown Named Agents of Federal Bureau of
Narcotics, 403 U.S. 388, 394 n.7 (1971)).  However, the Court of

Appeals has "not required specific search protocols or
minimization undertakings as basic predicates for upholding
digital search warrants." United States v. Romain, No. 13 Cr.
724, 2014 WL 6765831, at *9 (S.D.N.Y. Dec. 1, 2014) (quoting
Galpin, 720 F.3d at 451). "[I]n the absence of controlling
precedent requiring search protocols, it cannot be said the
agents acted in bad faith." United States v. Lustyik, 57 F.
Supp. 3d 213, 229 (S.D.N.Y. 2014) (citation omitted). Although
the Government reviewed communications that predated the
Relevant Time Period, "[s]uch an invasion of a criminal
defendant's privacy is inevitable, however, in almost any
warranted search because in searches for papers, it is certain
that some innocuous documents will be examined, at least
cursorily, in order to determine whether they are, in fact,
among those papers authorized to be seized." United States v.
Gatto, 313 F. Supp. 3d 551, 561 (S.D.N.Y. 2018) (internal
quotation marks and citation omitted).

Accordingly, the Government neither violated the Fourth
Amendment by reviewing plain-view evidence of the Subject
Offenses that predated the Relevant Time Period nor acted in bad
faith. Thus, Mr. Rosario's motion to suppress all evidence
seized from the Subject Device is denied.

## III.   <u>Conclusion</u>

To the extent and for the reasons stated above, the motion to motion to sever (dkt. no. 85) is <u>DENIED</u>, and the motion to suppress (dkt. no. 85) is <u>DENIED</u>.  The Clerk of the Court shall close the open motions (dkt. no. 85).

**SO ORDERED.**

Dated:     December 1, 2021
           New York, New York

LORETTA A. PRESKA
Senior United States District Judge

23